STATE OF MISSOURI at the relation of W. M. ANDERSON ET AL., Relators, v. JOHN WITTHAUS, as Judge of the Circuit Court of St. Louis County, and of Division No. 2 thereof.—102 S. W. (2d) 99.

Court en Banc, February 19, 1937.

*Sam O. Hargus,* General Counsel, and *James P. Boyd,* Assistant Counsel, for Public Service Commission; *Louis V. Stigall,* Chief Counsel, for State Highway Commission and P. H. Daniels, Division Engineer; *Roy McKittrick,* Attorney General, and *Covell R. Hewitt,* Assistant Attorney General, for B. M. Casteel, Commander, State Highway Patrol, and T. L. Leigh, Commanding Officer, Troop C.

*W. Blodgett Priest, Malcolm I. Frank* and *Shepard R. Evans* for respondent.

LEEDY, J.—This is an original proceeding in prohibition to restrain respondent judge from entertaining further jurisdiction in a suit brought in the Circuit Court of St. Louis County by one J. J. Goldstein, as plaintiff, against relators (members of, and composing the Public Service Commission, and the State Highway Commission; the Superintendent of the State Highway Patrol; the commanding office of Troop C thereof, and one of the division engineers of the Highway Department), as defendants, to enjoin them from arresting, molesting or harassing or ordering the arrest of plaintiff therein, his agents, servants and employees, for operating his busses without a permit or license from the Public Service Commission. A restraining order was issued, as prayed in the petition, conditioned upon Goldstein giving a bond in the penal sum of Two Hundred Dollars. The issuance thereof was without notice to defendants, who thereafter appeared specially, and moved to dismiss said restraining order and plaintiff's "pretended cause of action." Their motion was overruled, and a temporary injunction granted. Whereupon relators applied to this court for prohibition, and the preliminary rule issued. The case is here on the application for the writ, the preliminary rule itself, and the motion of respondent to quash said application and the rule. As originally brought, this proceeding was directed against Hon. Jerry Mulloy, as judge of the Circuit Court of St. Louis County, and Division No. 2 thereof. His term of office having expired after the issuance of the preliminary rule, upon the suggestion and motion of relators, his successor in office, the present incumbent, Hon. John Witthaus, judge, was substituted as respondent in his place and stead.

The suit in the circuit court is based on the theory that Goldstein's business of "chartering" busses does not come within the purview of what is commonly known as the Bus and Truck Act, passed by the Fifty-Sixth General Assembly. [Laws 1931, p. 304.] Its purpose, as respondent contends, was to enjoin prosecutions for alleged violations of a criminal statute (plaintiff's remedy not being adequate, and such prosecutions would work an irreparable injury), and so prevent relators from acting beyond the scope of their authority and duties, as delegated under the statute, supra. On the other hand, it is relators' position that Goldstein's opera-

tions were such as to constitute him a "motor carrier," as defined by the act, and that it was, therefore, unlawful for him to operate his busses without first having obtained a certificate of convenience and necessity from the Public Service Commission. They invoke the statute (Sec. 5234, R. S. 1929; Sec. 5234, Mo. Stat. Ann., p. 6661) which provides that "no court of this state, except the circuit courts to the extent herein specified and the supreme court on appeal, shall have jurisdiction to . . . enjoin, restrain or interfere with the commission in the performance of its official duties." Relators rely on the case of State ex rel. v. Mulloy, J., 333 Mo. 282, 62 S. W. (2d) 730, in which prohibition was granted to restrain the circuit court from entertaining jurisdiction in an injunction suit brought by Goldstein, and others, against the members of the Public Service Commission, and others, growing out of the operations here in controversy. There Goldstein had pending an application for a contract hauler's permit in connection with his business of "chartering" busses. But it will be observed that the temporary injunction in the present case is not as broad as the one considered there, where the order not only enjoined arrests, but restrained the Public Service Commission "from attempting to enforce any and all provisions of said act." The provisions of the act in question touching the powers and duties of the several State agencies are here involved are reviewed in that case. [See, also, Schwartzman Service, Inc., v. Stahl et al., 60 Fed. (2d) 1034.]

The crux of this case is whether Goldstein is a "motor carrier," and so within the statute. If so, it is tacitly conceded that the circuit court would have no jurisdiction to grant him the relief sought in his suit pending therein. Respondent takes the position that "in an original proceeding in prohibition to prevent a judge of the circuit court from entertaining jurisdiction of a suit to enjoin criminal prosecution for alleged violation of a statute, the facts well pleaded in the petition for injunction must be treated as true." To this we assent. [State ex rel. v. Hall, J., 297 Mo. 594, 250 S. W. 64.] Applying this rule, can it be determined from the allegations of the bill in the circuit court whether the nature of Goldstein's business is such as to bring him within the statute or whether, as he contends, he is a mere bailee for hire, or private carrier? We think so. It was alleged in the bill that Goldstein "is the owner of three (3) large 29-passenger A. F. C. motor busses, and has been engaged in operation of motor busses since 1924. That he has a large sum of money invested in said busses and has built up a large business and following in the 'hiring out' or 'chartering' of said busses to various clubs, churches, schools, societies, baseball teams, football teams and similar groups who are transported as a collective body to and from various points in the State of Missouri over the public highways of said State, and with no regular desti-

nation or route but to any particular point to which the said club or group of persons wish to be transported on its individual trip for its picnic, baseball game, or similar object. And that plaintiff receives as pay therefor, a lump sum of said particular trip, not based upon the number of passengers carried but by agreement with the said church, club, school or similar group. That plaintiff on such trips does not carry or pick up other passengers than those contained and belonging to the group to be transported. That said operations and business is strictly a 'private business' based solely on the individual arrangements on the occasional trip desired with such club, church, school or similar group, who wish private transportation in a body. . . . Plaintiff further states that he has invested a large sum of money in his business and that he has built up in the past ten years a profitable business and good will; that his busses are equipped with all the modern safety devices and requirements for the protection of his passengers and other vehicles on the highway and that he carried adequate liability insurance for the protection of public, passengers, and their property, consistent with good business; that his vehicles are operated by competent and licensed drivers; and that in addition thereto, plaintiff has a large sum of money invested in mechanical, repair and garage equipment, accessories, materials and supplies for the proper and safe maintenance, operation and conduct of his business. Plaintiff further states that he has a number of chartered groups already arranged and numerous others in contemplation with schools, clubs, churches, societies and similar groups, and if the plaintiff is molested, etc., . . . he will suffer a great and irreparable pecuniary loss and injury to his business and his good will, etc."

The act in question, as its title discloses, provides "for the supervision, regulation and licensing of transportation of persons and property for hire over the public highways of the State of Missouri by motor vehicles; conferring jurisdiction upon the Public Service Commission to license, regulate and supervise such transportation; providing for the enforcement of the provisions of this act, and for the punishment for violation thereof." It is expressly declared by Section 5280 that "the legislation herein contained is enacted for the sole purpose of promoting and conserving the interests and convenience of the public." By paragraph (b) of Section 5264, it is provided, "The term 'motor carrier,' when used in this act, means any person, firm, partnership, association, jointstock company, corporation, lessee, trustee, or receiver appointed by any court whatsoever, operating any motor vehicle with or without trailer or trailers attached, upon any public highway for the transportation of persons or property or both or of providing or funishing such transportation service, for hire as a common carrier. *Provided, however,* this act shall not be so construed as to apply to

340 Mo. Sup.—64.

motor vehicles used in the transportation of passengers or property for hire, operating over and along regular routes within any municipal corporation or a municipal corporation and the suburban territory adjacent thereto, forming a part of transportation system within such municipal corporation or such municipal corporation and adjacent suburban territory, where the major part of such system is within the limits of such municipal corporation." This definition gives the term "motor carrier" a meaning equivalent to that of a common carrier. [Schwartzman Service, Inc., v. Stahl et al., supra.]

In State ex rel. v. Public Service Commission, 275 Mo. 483, 205 S. W. 36, the following from 1 Wyman on Public Service Corporations, 227, was quoted with approval: "The fundamental characteristic of a public calling is indiscriminate dealing with the general public. As Baron Alderson said in the leading case: 'Everybody who undertakes to carry for any one who asks him is a common carrier. The criterion is whether he carries for particular persons only, or whether he carries for every one. If a man holds himself out to do it for every one who asks him, he is a common carrier; but if he does not do it for every one, but carries for you and me only, that is a matter of special contract.' This regular course of public service without respect of persons makes out a plain case of public profession by reason of the inevitable inference which the general public will put upon it. 'One transporting goods from place to place for hire, for such as see fit to employ him, whether usually or occasionally, whether as a principal or an incidental occupation, is a common carrier.' " In McBride v. McNally, 243 Pa. St. 206, the appellant, operating on the Ohio River an excursion steamboat of which he was owner, had engaged to carry the members of a certain church society on an excursion up and down the river, for a lump sum. One of the excursionists sued to recover damages for personal injuries sustained by her in boarding the vessel. As against the contention that the relation was one of bailment, or private carrier, appellant was held liable as a common carrier.

In Campbell v. Storage & Van Co., 187 Mo. App. 565, 174 S. W. 140, the court held the following to be the rule for determining status as between private and common carriers: "First, whether the business is a public business or employment, and whether the service is rendered to all indifferently; second, whether defendant has held itself out as so engaged so as to make it liable for refusal to accept the employment proffered; and along with these may go the question as to whether the contracts under which business is accepted are made on the basis of private or public carriage. This last, however, is only a circumstance which may be looked at in arriving at a conclusion on the two above-mentioned questions."

And it was further said, "If the defendant, by reason of the circumstances, is a common carrier as to the goods in question, it cannot by any special contract, change its status as such or exempt itself from the responsibilities growing out of the relation." The case cites with approval the following from 1 Hutchinson on Carriers (3 Ed.), sec. 59: "If he professes to carry only a certain kind, this does not take from him his status as a common carrier."

In Lloyd v. Haugh, 223 Pa. St. 148, an oft-cited case (trespass to recover damages for the loss of household effects), the court was considering the question of whether the defendant was a common carrier. It was there said, "Defendant does hold itself out to the public as engaged in the moving of household goods, thereby inviting employment along this line. . . . Notwithstanding this public committal of the company to a general and undiscriminating service, it is argued that inasmuch as the company claims the right to select those whom it will serve, and because its custom has been and is to discriminate, accepting some and rejecting others, as it may choose, this circumstance makes it a private as distinguished from a common carrier, and exempts it from the obligations and liability which the law imposes on the latter relation. The argument assumes that no legal duty rests upon the defendant to treat alike all applying for is services. . . . Whether such a duty attaches as a necessary incident to the relation of common carrier, under any and all circumstances, need not be discussed. . . . Conceding, however, that such a duty rests upon a common carrier, to claim that one is not a common carrier because he has persistently disregarded this duty and has arbitrarily chosen whom he would serve, notwithstanding he has invited the public generally to apply, is to make a public duty determinable by the pleasure of the individual, and not by principle or law. We express a doctrine universally sanctioned when we say, that anyone who holds himself out to the public as ready to undertake for hire or reward the transportation of goods from place to place, and so invites custom of the public, is in the estimation of the law a common carrier. . . . We are dealing with a case where the carrier made the transportation of household goods a part of its regular business, advertised that business in a way to solicit custom from the general public. An unavoidable implication arises that it holds itself in readiness to engage with anyone who might apply." The essential feature of a public use is that it is not confined to privileged individuals, but is open to the indefinite public. It is this indefinite or unrestricted quality that gives it its public character. [White v. Smith, 189 Pa. St. 222, 42 Atl. 125, 43 L. R. A. 498.] "It follows that the use must be so extensive as to imply an offer to serve all the public, or that there be other circumstances from which it may be reasonably inferred that the carrier was undertaking to serve all

1012

to the limit of his capacity.  One, however, does not become a public carrier because he is engaged exclusively in transporting persons or property or because the person or persons whom he serves take all his facilities.  The test is whether he has invited the trade of the public." [Klawansky v. Public Service Commission, 187 Atl. 248.]  But, "the public does not mean everybody all the time." [Spontak v. Public Service Comm., 73 Pa. Super. 219, l. c. 221, citing Peck v. Tribune Co., 214 U. S. 185.]  If the carrier carries goods as a public employment, undertaking to carry goods for persons generally, and holds himself out to the public as ready to engage in that business as a business, and not as a casual occupation, he comes within the definition of a common carrier. [Story on Bailments, sec. 495.]

Under the admitted facts in relation to the nature of Goldstein's business, as set out in his bill filed in the circuit court, we are constrained to hold that he is amenable to the Bus and Truck Act, as a common carrier.  The preliminary rule in prohibition should be made absolute; and it is so ordered.  All concur.