ALASKA AIR TRANSPORT, Inc., et al. v.
ALASKA AIRPLANE CHARTER CO.

No. 5588–A.

District Court, Alaska.
First Division. Juneau.
Aug. 20, 1947.

Faulkner & Banfield, of Juneau, Alaska, for plaintiff.

Patrick J. Gilmore, Jr., U. S. Dist. Atty., of Juneau, Alaska, for C.A.B. as amicus curiae.

John E. Manders, of Anchorage, Alaska, as amicus curiae.

Simon Hellenthal, of Juneau, Alaska, for defendant.

FOLTA, District Judge.

Plaintiff, a certificated air carrier, alleges that defendant has since June 24, 1946, been engaged in air transportation within the meaning of the Civil Aeronautics Act of June 23, 1938, 52 Stat. 973, as amended, 49 U.S.C.A. § 401, in direct competition with plaintiff, without having obtained a certificate and, under Section 1007 (a) of the Act, seeks to enjoin defendant from continuing therein. Section 401 (a) of the Act prohibits any air carrier from engaging in air transportation except under a certificate issued by the Civil Aeronautics Board. Section 1 (10) defines air transportation as including interstate commerce, which in turn is defined in Section 1 (21) as, "The carriage by aircraft of persons or property as a common carrier for compensation or hire * * * in commerce between * * places in the same Territory."

Defendant admits that it is engaged in carrying persons and property by air for hire and that it has not obtained a certificate, but denies that it is a common carrier.

Upon the hearing it was shown that the defendant, by an advertisement in the issue of the local paper of June 24, 1946, and contemporaneously by radio, announced the inauguration of its service at Juneau for the transportation of persons and property by charter at hourly, daily, weekly and monthly rates, between Juneau and other places in Southeastern Alaska. This advertising was continued until July 18, 1946, when it was discontinued, as the witness Goodwin, President of defendant corporation, put it, to avoid becoming involved in common carrier operations. The defendant solicited business of P. E. Harris & Company, and among governmental agencies, maintained a place of business, and its name was listed in the Juneau Telephone Directory.

The evidence further disclosed that the operations of the defendant were entirely non-scheduled, being confined to so-called

charter flights, by one ten-place and two two-place planes. In addition to entering into contracts with two corporations, the business of which involves the frequent use of air transportation, the defendant carried persons and property indiscriminately to the limit of its facilities, but was unable to meet all demands for the use of its services. Between June 21st and September 26, 1946, the defendant made 163 flights between Juneau and other places in Southeastern Alaska, and, from the resumption of full-scale operations in the spring of 1947 to the date of the hearing on June 16th, it had made about 100 flights. During all that time the character of its operations remained substantially the same.

The defendant admitted at the hearing that it had no certificate of public convenience and necessity, and was not exempted from such requirement under Section 416 (b) (1) of the Act.

■ The sole question presented is whether the defendant is a common carrier within the meaning of the Act.

Defendant contends that it is not a common carrier because it does not operate on a schedule and engages in charter service exclusively. By its initial announcement and subsequent advertising it held itself out as operating a charter service. It is significant, however, that the term "charter" is not used in this connection in a strictly legal sense to indicate instances where control of the plane is surrendered by the owner to the charterer or lessee. Rather the term is used to describe those cases in which the exclusive use of the plane is contracted for usually at an hourly rate, which is the normal procedure where air transportation is desired for pleasure, sightseeing, hunting, fishing, or other purposes. But it does not necessarily follow that such operations have the effect of removing one from the status of a common carrier in the absence of a change in the control of the plane. Cf. United States v. Hvoslef, 237 U.S. 1, 35 S.Ct. 459, 59 L.Ed. 813, Ann.Cas. 1916A, 286; Curtiss-Wright Flying Service, Inc., v. Glose, D.C.1932, affirmed, 3 Cir., 66 F.2d 710, certiorari denied 290 U.S. 696, 54 S.Ct. 132, 78 L.Ed. 599. In all such cases the contractual arrangement is for the furnishing of transportation, and the owner does not lose his status as a carrier. Terminal Taxicab Co. v. Kutz, 241 U.S. 252, 36 S.Ct. 583, 60 L.Ed. 984, Ann.Cas.1916D, 765; State ex rel. Anderson v. Witthaus, 340 Mo. 1004, 102 S.W.2d 99.

After the publicity which attended the inauguration of its service and several months of operations in this manner, defendant ceased advertising to avoid the implication of a common carrier status, but there was no corresponding change in the character of its operations, and the publicity already received, coupled with that which it received from continuing to serve the public, sufficed to bring sufficient business to keep the defendant operating, not only to the extent of its facilities, but also compelled it to refuse business. In these circumstances cessation of advertising alone was ineffectual to change its status, Stoner v. Underseth, 85 Mont. 11, 277 P. 437, 441; Page Airways, Inc., No. 1896, decided May 17, 1946, in the face of a course of conduct in the operation of its business that had all the earmarks of a common carrier operation. State ex rel. Board of Railroad Commissioners v. Rosenstein, 217 Iowa 985, 252 N.W. 251, 253; Northeastern Lines, Inc., 11 M.C.C. 179, 182.

The fact that the defendant served only a limited portion of the public does not militate against the existence of a common carrier status where, as here, there is a willingness to serve the public indifferently. In Terminal Taxicab Co. v. Kutz, supra, plaintiff contracted with certain hotels to furnish enough taxis and autos within certain hours to meet the needs of the hotels, receiving the exclusive right to solicit business in and about the hotels by limiting its services to guests of the hotel. Plaintiff contended that such limitation prevented it from having the status of a common carrier. In disposing of this contention the Court said, 241 U.S. at page 255, 36 S.Ct. at page 584, 60 L.Ed. 984, Ann.Cas. 1916D, 765:

"We do not perceive that this limitation removes the public character of the service, or takes it out of the definition in the act. No carrier serves all of the public. His customers are limited by place, require-

ments, ability to pay, and other facts. But the public generally is free to go to hotels if it can afford to, as it is free to travel by rail, and through the hotel door to call on the plaintiff for a taxicab. * * * The service affects so considerable a fraction of the public that it is public in the same sense in which any other may be called so. * * * The public does not mean everybody all the time."

Similarly, in State ex rel. Anderson v. Witthaus, supra, where a carrier had been operating three large busses over the state highways for several years but limited his activities to the "chartering" of these busses to various schools, churches, clubs, athletic teams, and similar clubs, the Court held that such limitation did not make the carrier a private carrier. Cf. Michigan Public Utilities Commission v. Duke, 266 U.S. 570, 45 S.Ct. 191, 69 L.Ed. 445, 36 A.L.R. 1105; Ace-High Dresses, Inc. v. J. C. Trucking Co., 122 Conn. 578, 191 A. 536, 112 A.L.R. 86; Brink's Express Co. v. Public Service Commission, 117 Pa.Super. 268, 178 A. 346.

The circumstance, therefore, that defendant occasionally discriminates between patrons, accepting some and rejecting others, or occasionally refuses business, is not, in view of the entire evidence, controlling. Claypool v. Lightning Delivery Co., 38 Ariz. 262, 299 P. 126, 127.

Moreover, where the characteristics of a common carrier are present the fact that the carrier does not operate according to schedule is not controlling. Ziser v. Colonial Western Airways, Inc., 162 A. 591, 10 N.J.Misc. 1118; Claypool v. Lightning Delivery Co., supra.

The facts in the instant case are not unlike those in Bingaman v. Public Service Commission, 105 Pa.Super. 272, 161 A. 892, where the operator conducted a motor trucking business picking up goods at certain mercantile establishments and making deliveries en route in conformity with eighteen private contracts. Although there was no definite evidence that he advertised or did anything to expressly hold himself out as a common carrier, he admitted that he did haul for any person who was willing to sign a contract and, if approached on the subject, would give the information he was engaged in the business for hire. The Court held that these facts were sufficient to constitute Bingaman a common carrier for, within the limits of his operations, he was available to everyone who desired his service.

Here the defendant has held itself out to the public generally, first by advertising and other forms of publicity and later by its course of conduct, that it would, within the limitations of its facilities, carry for hire freight and all persons applying to it, and thus invited the patronage of the public. The ensuing response of the public and its accommodation by the defendant served to impress upon it the character of a common carrier. These factors, rather than the descriptive label placed by defendant upon its operations, are determinative of its status. McKay v. Public Utilities Commission, 104 Colo. 402, 91 P.2d 965; United States v. State of California, 297 U.S. 175, 56 S.Ct. 421, 80 L.Ed. 567.

Upon a consideration of the entire evidence the Court concludes that the defendant is a common carrier and that it should be enjoined from further operating as such, and it is so ordered.