FLYING TIGER LINE, Inc., et al. v. ATCH-
ISON, T. & S. F. RY. CO. et al.
Civ. No. 7788–PH.
District Court, S. D. California,
Central Division.
Dec. 29, 1947.

Hoag & Mack and Richard H. Keating, all of Los Angeles, Cal., for plaintiffs.

Robert W. Walker and L. W. Butterfield, both of Los Angeles, Cal., for defendant Atchison, T. & S. F. Ry. Co.

Sheppard, Mullin, Richter & Balthis, James C. Sheppard, Jr., Cameron W. Cecil and Roy Littlejohn, all of Los Angeles, Cal., for defendant Santa Fe Skyway, Inc.

HALL, District Judge.

I indicated that I thought I would be ready for a decision on certain phases of the matters which had been argued, and I have come to a conclusion and have endeavored to rough out a memorandum here which I will try to follow.

The plaintiffs, by their complaint, seek to permanently enjoin and restrain the defendants from asserted violations of Sec-

tion 401(a) of the Civil Aeronautics Act as amended, 49 U.S.C.A. § 481. Their motion for an injunction pendente lite, and their motion for the production of documents under the discovery provisions of the Federal Rules of Civil Procedure was noticed and set for hearing, along with the defendants' motions to dismiss, last Monday. But in accordance with the understanding of counsel, argument was confined to the motions to dismiss, at the conclusion of which on Wednesday the other motions were continued until today for argument and disposition.

After setting forth the corporate status of the various parties, the complaint in substance alleges that the plaintiffs are authorized common carriers of property only under Letters of Registration, duly issued by the Civil Aeronautics Board, pursuant to the Act and applicable regulations; that they are parties in interest, as that phrase is used in the Civil Aeronautics Act; that the defendant Santa Fe Skyway is operating as a common carrier of property only without authorization of any kind from the Civil Aeronautics Board and in violation of the Civil Aeronautics Act and the applicable regulations; that the defendant Santa Fe Skyway is a wholly owned subsidiary of the defendant Atchison, Topeka and Santa Fe Railway Company, and that both defendants are parties interested in or affected by the instant complaint.

Each of the defendants filed motions to dismiss. While they are stated in different language, the several grounds are as follows: improper joinder of plaintiffs; improper joinder of defendants; that neither of the plaintiffs are parties in interest; that the defendants are not common carriers, and that the complaint fails to show what, if any, injury or damage will result to the plaintiffs from the asserted conduct of the defendants.

The first two points may be disposed of without extended discussion.

■ Under Federal Rules of Civil Procedure, rules 18, 19, 20 and 21, 28 U.S.C.A. following section 723c, wide latitude is given in the joinder of parties, either permissively or by order of the Court, to the end that multiple litigation of similar or identical controversies may be avoided.

■ By the complaint each plaintiff has the same status and occupies the same relationships as the other towards both defendants. They seek the same relief. Their basis for relief arises out of the same series of occurrences, transactions and conduct of the defendants. The questions of law and fact are common to each of them. In short, if either of them are in court each of them is entitled to be in court in a separate action. There is thus no improper joinder of the plaintiffs.

■ It seems to me that under the rules, the allegation in the complaint that Skyway is the wholly owned subsidiary of the Railway company is sufficient to properly join them both as defendants. By such allegation Skyway is completely the creature and agent of the railway company, and a mere actor for it in the transactions complained of. But even if the railway company were not properly joined under the rule, the Civil Aeronautics Act, by Section 1009, 49 U.S.C.A. § 649, permits such joinder. It provides: "In any proceeding for the enforcement of the provisions of this chapter * * * begun originally in any court of the United States, it shall be lawful to include as parties * * * all persons interested in, or affected by the matter under consideration."

It needs no comment to show that if the relief asked by the plaintiffs were granted, the Railway would be "interested in" and "affected by" the judgment. I conclude that the railway is properly joined.

■ Before discussing the remaining points raised by the motions to dismiss, recourse must be had to the applicable provisions of the statute.

49 U.S.C.A. § 647(a) provides, in the applicable portions, as follows: "If any person violates any provision of this chapter, or any rule, regulation, requirement, or order thereunder, or any term, condition, or limitation of any certificate or permit issued under this chapter, the Board, its duly authorized agent, or, in the case of a violation of Section 481(a) of this chapter, any party in interest, may apply to the district court of the United States, for any district wherein such person carries on his business or wherein the violation occurred, for the enforcement of such provision of

this chapter, or of such rule, regulation, requirement, order, term, condition, or limitation; * * *."

That is the end of the quotation. The rest of it is not material except that the section provides for jurisdiction to enforce obedience. So that there is not required to be present in this type of case the usual other elements of jurisdiction, such as diversity of citizenship and the like, because this section confers jurisdiction if there is a violation of the chapter.

49 U.S.C.A. § 481(a) provides that: "No air carrier shall engage in any air transportation unless there is in force a certificate issued by the Board authorizing such air carrier to engage in such transportation: * * *."

And in Section 481(d) (1) it provides for the issuance of certificates of public convenience and necessity, and in Section 481 (d) (2) it provides authorization to the Board to issue limited certificates, that is, a certificate for limited periods.

49 U.S.C.A. § 401 defines the term "air carrier" to mean: " * * * any citizen of the United States who undertakes, whether directly or indirectly or by a lease or any other arrangement, to engage in air transportation: Provided, That the Board may by order relieve air carriers who are not directly engaged in the operation of aircraft in air transportation from the provisions of this chapter to the extent and for such periods as may be in the public interest."

Subdivision (10) of Section 401 defines "air transportation" as follows: " 'Air transportation' means interstate, overseas, or foreign air transportation or the transportation of mail by aircraft."

Subdivision (21) of Section 401 provides that: " 'Interstate air transportation', 'overseas air transportation', and 'foreign air transportation', respectively, mean the carriage by aircraft of persons or property as a common carrier for compensation or hire or the carriage of mail by aircraft, in commerce between, respectively—."

Section 421 provides for the creation of the Board, Section 402 is a declaration of policy of Congress, both of which are material in connection with the whole matter,

and Section 425(a) defines the general powers and duties of the Board, and particularly in Subdivision (a) it states: "The Board is empowered to perform such acts, to conduct such investigations, to issue and amend such orders, and to make and amend such general or special rules, regulations, and procedure, pursuant to and consistent with the provisions of this chapter, as it shall deem necessary to carry out such provisions and to exercise and perform its powers and duties under this chapter."

Section 496, in Subdivisions (a) and (b) provide that:

"The Board may from time to time establish such just and reasonable classifications or groups of air carriers for the purposes of this subchapter as the nature of the services performed by such air carriers shall require; and such just and reasonable rules, and regulations, pursuant to and consistent with the provisions of this subchapter, to be observed by each such class or group, as the Board finds necessary in the public interest.

"(b) (1) The Board, from time to time and to the extent necessary, may (except as provided in paragraph (2) of this subsection) exempt from the requirements of this subchapter or any provision thereof, or any rule, regulation, term, condition, or limitation prescribed thereunder, any air carrier or class of air carriers, if it finds that the enforcement of this subchapter or such provision, or such rule, regulation, term, condition, or limitation is or would be an undue burden on such air carrier or class of air carriers by reason of the limited extent of, or unusual circumstances affecting, the operations of such air carrier or class of air carriers and is not in the public interest."

Subdivision (2) mentioned in that Subdivision (b) we are not concerned with here, as I read the matter.

The defendants contend that the plaintiffs are not parties in interest under Section 647(a), in that they do not possess a certificate of public convenience and necessity and that the Letters of Registration do not make them such.

In this connection they rely in part on Alaska Air Transport v. Alaska Airplane

Charter Co., D.C.Alaska 1947, 72 F.Supp. 609, and Hawaiian Airlines, Ltd., v. Trans-Pacific Airlines, Ltd., D.C.Hawaii 1947, 73 F.Supp. 68, and point out that in each of them the plaintiffs were certified air carriers. In neither of these cases was there an inclusive or exclusive definition of the term "party in interest." The Court merely held that the plaintiffs were each a party in interest, and properly so, it seems to me, without any discussion of that subject.

Section 647(a) of the Civil Aeronautics Act was apparently based on a similar provision first contained in the Interstate Commerce Act, 49 U.S.C.A. § 1(20), and later appearing in the Motor Carriers Act, 49 U.S.C.A. § 305(g).

In Detroit & M. R. Co. v. Boyne City, G. & A. Railroad Co., D.C.E.D.Mich. 1923, 286 F. 540, the plaintiff railroad, a certificated common carrier, and an individual across whose property the proposed extension line of the defendant would run, were each held to be a party in interest under the Interstate Commerce Act.

In Western Pacific, etc., v. Southern Pacific, 1931, 284 U.S. 47, 52 S.Ct. 56, 57, 76 L.Ed. 160, each of the parties were certificated common carriers under the Interstate Commerce Act on a general basis. But neither of the parties were certificated, nor had any approval by the Interstate Commerce Commission of the partial construction which was the basis of that litigation. The Court did not set as a standard the requirement that the plaintiff there must be a certified or was a certified common carrier to constitute a party in interest, but based its decision on the ground that the "unauthorized and therefore unlawful" undertaking by the defendant threatened the welfare of the plaintiff by directly and seriously affecting a transportation project already proposed to be undertaken by the plaintiff, and with which the proposed extension of the defendant would interfere. It must be noted that the suit was filed while an application by the plaintiff for certification of that project was pending before the Interstate Commerce Commission and before the Commission had acted on it one way or the other.

In Singer, etc. v. Union Pacific, 1940, 311 U.S. 295, 61 S.Ct. 254, 257, 85 L.Ed.

198, the plaintiff was the owner of a market whose business would be injured by the—and I am quoting now from the decision—"competition created by the construction and operation of the rival market, and not the construction or operation of the transportation facilities furnished to it by the defendant or by others engaged in the transportation business."

The Court held thus there was no direct loss, such as appeared in Detroit & M. R. Co. v. Boyne City, G. & A. R. Co., D.C., 286 F. 540, nor as apppeared in Western Pacific v. Southern Pacific, 284 U.S. 47, 52 S.Ct. 56, 76 L.Ed. 160, where the "circumstances disclosed a special interest * * * with probability of direct loss from what the defendant—not another—proposed to do." It also pointed out that the plaintiffs were "not in competition with the defendant," and were "not engaged in the transportation business." The Court quoted with approval its prior statement in the Western Pacific case, in part as follows: "It will suffice, we think, if the bill discloses that some definite legal right possessed by complainant is seriously threatened, or that the unauthorized and therefore, unlawful action of the defendant carrier may directly and adversely affect the complainant's welfare by bringing about some material change in the transportation situation." The Court held that the plaintiff market was thus not a party in interest and also held that the intervenor City of Kansas City was not a party in interest for the same reasons.

In Claiborne-Annapolis Ferry v. United States, 1932, 285 U.S. 382, 52 S.Ct. 440, 441, 76 L.Ed. 808, the Court held that a ferry line which alleged that another ferry proposed to be constructed by the Chesapeake Beach Railway Company would "interfere with and hamper the efforts of your petitioner to give adequate service on its present route," 20 miles further north, was a party in interest under the Interstate Commerce Act, as "the bill disclosed that the proposed and permitted action might directly and adversely affect its welfare by changing the transportation situation."

In Alton R. Co. v. United States, 1942, 315 U.S. 15, 62 S.Ct. 432, 435, 86 L.Ed. 586, 71 railroad companies joined in a suit

in the District Court to review an order of the Interstate Commerce Commission allowing a certificate of public convenience and necessity to one Fleming under the Motor Carriers Act. After pointing out that each of the plaintiff railways was a common carrier and a competitor of Fleming in some portion of the territory which Fleming was authorized to serve, the Court stated as follows: "They clearly have a stake as carriers in the transportation situation which the order of the Commission affected. They are competitors of Fleming for automobile traffic in territory served by him. They are transportation agencies directly affected by competition with the motor transport industry—competition which prior to the Motor Carrier Act of 1935 had proved destructive. * * * They are members of the national transportation system which that Act was designed to coordinate. * * * Hence they are parties in interest within the meaning of" the Act.

From the foregoing it seems clear to me that the tests to be applied in determining who or what is a party in interest, as announced to date by the Supreme Court, are whether or not a party has a clear legal right which will be directly affected, such as the legal right to enjoyment of his real property, as did Henry in the case of Detroit & M. R. Co. v. Boyne City, G. & A. R. Co., or whether or not the parties stand in a competitive relationship to one another so that the threatened acts of a defendant will directly and seriously affect a plaintiff by changing the transportation situation. The test is not whether or not the plaintiff possesses a certificate of public convenience and necessity, although that may give a party a clear legal right in certain circumstances, which would be an additional reason for regarding them as a party in interest.

That such a certificate is not a necessary prerequisite to becoming a party in interest is indicated by the Supreme Court in the Western Pacific case, where the plaintiff's position as such was sustained as a party in interest, while their petition for a certificate to cover the disputed operation was pending and before it was acted upon.

In any event, the plaintiffs in this case possess authorization from the Civil Aeronautics Board for their operations in the form of a Letter of Registration issued by the Board prior to suit, under the authority of Title 49 U.S.C.A. § 496(a) and (b), and Regulation 292.5 issued by the Board pursuant to the Act. Such letters of Registration under Section 292.5 are, in essence, a license for a limited time; may not be transferred; may be suspended or revoked; authorize the carriage of property only; and subject the holder to all the provisions of the Act except those special provisions relating to the carriage of persons and mail.

That it was contemplated that the Board should have the power to issue other than only certificates of convenience and necessity is indicated not only by the provisions in Section 496 but as well by the provisions in Sections 425 authorizing the Board to issue and amend such orders as may be necessary to carry out and perform its duties under the chapter, and as well by the provision in Section 647(a) which gives the Board the power to bring a suit for violation of any certificate or permit issued under this chapter, and also by the general declaration of policy contained in Section 402, which is exceedingly broad in its declaration, having particular reference not only to Subdivision (d) of Section 402, "competition to the extent necessary to assure the sound development of an air transportation system properly adapted to the needs of foreign and domestic commerce of the United States, of the Postal Service and of the national defense," but as well by (e) and (f) and particularly the provision of Subdivision (e), "the regulation of air commerce in such manner so as to best promote its development and safety", and by the definitions contained in Section 401(3) of "'air commerce', means interstate, overseas, or foreign air commerce or the transportation of mail by aircraft or any operation or navigation of aircraft within the limits of any civil airway or any operation or navigation of aircraft which directly affects, or which may endanger safety in, interstate, overseas, or foreign air commerce," and by Subdivision (20) of Section 401 which defines "'interstate air commerce', 'overseas air

commerce', and 'foreign air commerce', respectively, mean the carriage by aircraft of persons or property for compensation or hire"—I wish to call particular attention to the fact that there is no limitation here as to one being a common carrier—" or the carriage of mail by aircraft, or the operation or navigation of aircraft in the conduct or furtherance of a business or vocation, in commerce between, respectively—" and the usual definition of the places that it is between.

As indicated by the Civil Aeronautics Board in its introductory statement to Section 292.5 of the regulations, the procedure of issuing such Letters of Registration was made necessary in order to enable the development of the growing air cargo business in the United States pending the time when the Board administratively could hear and determine the various applications for certificates which were and are pending. By the Letters of Registration the plaintiffs become an' authorized part of the national air transportation system of the nation, which was referred to in the Alton Railroad case as one of the tests, and which under Section 402 of Title 49 was the declared purpose of Congress to foster and regulate. And by the Letters of Registration the plaintiffs have a legal right to operate under its terms and limits as non-certificated cargo carriers.

█ In determining whether or not the parties stand in a competitive relationship to one another so that the alleged and threatened acts of the defendants will directly and seriously affect the plaintiffs by changing the transportation system, recourse must be had to the complaint. It is not over-revealing. Were it standing alone it is doubtful if it would state a claim upon which relief could be granted, not only in connection with the allegations of being a party in interest, but also as to the allegations concerning great and irreparable injury. But I am bound by the ruling of the Circuit Court of Appeals of of this circuit in Bowles v. Glick, 9 Cir., 146 F.2d 566, and the Courts have approved on motions to dismiss the use of affidavits to supply facts not appearing in the complaint. (San Francisco Lodge, etc., v. Forrestal, D.C., 58 F.Supp. 466; Central

Mexico, etc., v. Munch, 2 Cir., 116 F.2d 85; National War Labor Board v. Montgomery, etc., 79 U.S.App.D.C. 200, 144 F.2d 528.) But of more importance in this connection is the fact that the defendants' motions to dismiss—both of them—state that they will be based not only on the complaint but also on the affidavits of North, Thomas and Lupton, as well as all other papers, documents and records on file in the action at the time the motion is heard. Numerous other affidavits have been filed not only by the defendants but the plaintiffs as well.

█ Without any attempt to summarize the many things covered, it appears from the complaint and the affidavits on file, so far as is material to the question of who or what is a party in interest, and the threatened injury to plaintiffs, that the plaintiffs and the defendants do occupy a competitive relationship towards each other for the transportation of cargo by air in much of the same territory.

It also appears that the defendant Skyway has taken some 30-odd of the customers of the plaintiffs and is soliciting actively the business of transportation of cargo by air. While the plaintiffs assert that these customers were taken by reduced rates, this feature is denied, but it is not denied in the affidavits of the defendants that such customers were formerly the customers of the plaintiffs and are now the customers of the defendants.

It also appears that the defendants have neither a certificate of public convenience and necessity nor Letters of Registration as "irregular air carriers" under Regulation 291.1, nor Letters of Registration as "non-certified cargo carriers" under Regulation 292.5. And it further appears that an application for Letters of Registration under Regulation 292.5, filed by the defendants, was denied by the Civil Aeronautics Board by its order on December 5, 1947, after the suit was filed but before the hearing on the motions to dismiss. Under the Rules of Practice of the Civil Aeronautics Board such order of denial is final under Regulation 285.11(d), even though an application for a rehearing is filed and may be pending.

These things are sufficient, in my judgment, to bring the plaintiffs within the tests of being a party in interest as laid down by the above cases under Section 647(a) of Title 49, and to be a sufficient showing of injury so as to warrant the denial of the motions to dismiss on those grounds.

 Turning now to the question as to whether or not the allegations of the complaint that the defendant is a common carrier are sufficient.

By Paragraphs VI and IX of the complaint the plaintiffs directly allege that defendant Skyway is and for one year has been engaged as a common carrier of property only. The defendants assert that this is not enough, that is, that such an allegation is not enough, and by their affidavits deny it and allege that they are engaged only as cargo contract carriers and that contract carriers are exempt from those provisions of the Civil Aeronautics Act requiring certification, and the like.

It is not necessary, in ascertaining the sufficiency of the complaint in this connection, to have recourse to the affidavits and counter-affidavits, and counter-affidavits to the counter-affidavits, on the subject of whether or not the defendant Skyway is a common carrier; nor is it necessary to review the numerous decisions cited and argued which deal with the various phases of conduct which may constitute one a common carrier. Whether one is a common carrier or not is, in my judgment, an ultimate fact, and it has been so held in Haynes v. MacFarlane, 207 Cal. 529, 279 P. 436, which ultimate fact may be alleged directly and simply in a complaint, and which is to be proved by evidence of the defendants' conduct just as any other ultimate fact. So many things enter into a determination of whether or not one is a common carrier that to require them to be set forth in a complaint would not serve the purpose of the Federal Rules of Civil Procedure to require that a complaint be "a short and plain statement of the claim showing that the pleader in entitled to relief." Rule 8(a), Federal Rules of Civil Procedure. I conclude that the allegations of the complaint are sufficient in that respect against a motion to dismiss.

Several other matters deserve mention.

It was suggested in argument that the plaintiffs have a remedy at law and that they may, under Section 642 of Title 49, complain to the Board of the alleged unlawful conduct of the defendants. It was also suggested that this was an administrative remedy which had not been exhausted. Neither of the points are, in my judgment, well taken. The remedy is in the alternative as allowed by the Act. Any person can file a complaint with the Board, or any person who is a party in interest may, if he desires, file an action in court under the limitations of Section 647(a) of Title 49. In fact, I see nothing in the Act which would prevent the taking of both procedures at the same time if a person thought it necessary.

Nor do I wish what I have said to be an indication that I agree with the plaintiffs' contention that the statute is penal as to the provisions invoked here by a private person and not the Board. What I have said concerning the determination of the tests of what is a party in interest is not intended to convey the notion that any less than I have indicated must appear from either the complaint or the affidavits which may be properly considered.

The motions to dismiss are denied.