## WESTERN PACIFIC CALIFORNIA RAILROAD CO. *v.* SOUTHERN PACIFIC CO..

No. 51. Argued October 27, 1931.—Decided November 23, 1931.

*Mr. F. M. Angellotti,* with whom *Mr. H. P. Tyler* was on the brief, for petitioner.

*Mr. J. R. Bell,* with whom *Messrs. C. O. Amonette, H. C. Booth, C. W. Durbrow,* and *Guy V. Shoup* were on the brief, for respondent.

MR. JUSTICE McREYNOLDS delivered the opinion of the Court.

By an amended bill presented to the United States District Court, Northern District of California, April 5, 1929, petitioner sought to prevent respondent from constructing an alleged extension until permission should be obtained from the Interstate Commerce Commission as

provided by Transportation Act of 1920, c. 91, § 402, ¶¶ 18, 19, 20, 21, 22, 41 Stat. 456, 477, 478.[1]

The petitioner is a railroad corporation organized under the laws of California to construct and operate a standard steam railroad from San Francisco southward along the western shore of San Francisco Bay and to Redwood City in San Mateo County. The proposed line, approximately 25 miles in length, lies eastward of, near, and substantially parallel to, a line operated by the respondent. In July, 1928, petitioner's directors authorized application to the Interstate Commerce Commission for authority to construct the proposed road, and this was promptly presented. During the following August, September and October, surveys of the route were made; a definite location was adopted in March, 1929.

The Interstate Commerce Commission heard the application in January, 1929; the Southern Pacific Company appeared in opposition. Prior to the filing of the bill the

---

[1] Transportation Act 1920, § 402—

Paragraph "(18) . . . . no carrier by railroad subject to this Act shall undertake the extension of its line of railroad . . . unless and until there shall first have been obtained from the Commission a certificate that the present or future public convenience and necessity require or will require the construction . . . of such . . . extended line . . ." Paragraph "(19) The application for and issuance of any such certificate shall be under such rules and regulations as to hearings and other matters as the Commission may from time to time prescribe, . . ." Paragraph "(20) . . . Any construction . . . contrary to the provisions . . . of paragraph (18) . . . may be enjoined by any court of competent jurisdiction at the suit of . . . any party in interest. . . ." Paragraph "(21) The Commission may, after hearing, in a proceeding upon complaint or upon its own initiative without complaint, authorize or require by order any carrier by railroad subject to this Act, party to such proceeding, to provide itself with safe and adequate facilities . . ., and to extend its line or lines . . ." Paragraph "(22) The authority of the Commission conferred by paragraphs (18) to (21), both inclusive, shall not extend to the construction . . . of spur, industrial, team, switching or side tracks, . . . to be located wholly within one State, . . ."

Commission had taken no final action, nor had actual construction of the proposed road begun.

The respondent, as owner or lessee, operates an extensive interstate railroad system, including a double track line from San Francisco southward through Redwood City. In March, 1929, it began to lay tracks in San Mateo County with the intention that they should ultimately extend from its main line some eighty-two hundred feet easterly and across petitioner's proposed route to points along the Bay. Its purpose was to impede and prevent petitioner's proposed construction and operation; also to secure traffic from a district adjacent to the petitioner's proposed line, the industrial development of which was anticipated.

In defense to the bill respondent relied especially upon two grounds. First, that petitioner was not a "party in interest" within the meaning of the Transportation Act, and therefore could not maintain the suit. Second, that the line which it had commenced to construct would not become an extension, but a mere industrial, or spur, track. The trial court considered and rejected both grounds of defense and directed an injunction as prayed.

The Circuit Court of Appeals was of opinion that, in the circumstances, the petitioner was not "a party in interest," and upon that ground reversed the decree of the trial court. It expressed no opinion in respect of the second defense. This action, we think, was error; and its decree must be reversed. The cause will be remanded there for determination of the question of fact.

Paragraphs 18 to 22, *supra*, were considered here in *Texas & Pacific Ry. Co.* v. *Gulf, Colorado & Santa Fe Ry. Co.*, 270 U. S. 266, and were declared to be part of the general plan by which Congress intended to promote development and maintenance of adequate railroad facilities. It was there said, p. 277: "It [Congress] recognized that preservation of the earning capacity, and conserva-

tion of the financial resources, of individual carriers is a matter of national concern; that the property employed must be permitted to earn a reasonable return; that the building of unnecessary lines involves a waste of resources and that the burden of this waste may fall upon the public; that competition between carriers may result in harm to the public as well as in benefit; and that when a railroad inflicts injury upon its rival, it may be the public which ultimately bears the loss. See *Railroad Commission* v. *Chicago, B. & Q. R. Co.*, 257 U. S. 563; *New England Divisions Case*, 261 U. S. 184; *Chicago Junction Case*, 264 U. S. 258; *Railroad Commission* v. *Southern Pacific Co.*, 264 U. S. 331. The Act sought, among other things, to avert such losses."

The Texas & Pacific Ry. sought to prevent an unauthorized competitor from building an extension into territory already served by it. Prior to the statute, it could not have maintained such a suit, since the competitor's proposed action did not threaten interference with any legal right. No carrier could then demand exemption from honest competition.

If, as the court below seems to have assumed, a "party in interest" must possess some clear legal right for which it might ask protection under the rules commonly accepted by courts of equity, the paragraphs under consideration would not materially aid the Congressional plan for promoting transportation. On the other hand, there was no purpose to permit any individual so inclined to institute such a proceeding. The complainant must possess something more than a common concern for obedience to law. See *Massachusetts* v. *Mellon*, 262 U. S. 447, 488. It will suffice, we think, if the bill discloses that some definite legal right possessed by complainant is seriously threatened or that the unauthorized and therefore unlawful action of the defendant carrier may directly and adversely affect the complainant's welfare by bringing about

some material change in the transportation situation. Here, the petitioner was peculiarly concerned; its own welfare was seriously threatened. It alleged the beginning of an unlawful undertaking by a carrier which might prove deleterious to it as well as to the public interest in securing and maintaining proper railroad service without undue loss. It relied upon the procedure prescribed by the statute to secure an orderly hearing and proper determination of the matter. The disclosures of the bill were enough to show that the respondent's intended action might directly and seriously affect the project which complainant was undertaking in good faith. There was enough to give the latter the standing of a "party in interest" within intendment of the Act.

*Reversed.*