### ALTON R. CO. et al. v. UNITED STATES et al.

No. 1323.

District Court, E. D. Michigan, S. D.

Jan. 31, 1941.

an application filed February 12, 1936, which was approved in part and in part denied, effective as of October 26, 1938. The Commission found that the applicant was engaged on June 1, 1935, and since that time, in bona fide operation as a common carrier by motor vehicle in drive-a-way service of new automotive vehicles, finished and unfinished, and new automotive vehicles chassis in interstate or foreign commerce, from Detroit, Michigan, on the one hand, to all points in Alabama, Arkansas, California, Georgia, Kentucky, North Carolina, Oregon, South Carolina, Tennessee, Texas, and Washington, and over irregular routes through Idaho, Illinois, Indiana, Iowa, Kansas, Nevada, Nebraska, Ohio, Oklahoma, Utah, Virginia, and Wyoming; that he was entitled to a certificate of public convenience and necessity authorizing the continuance of this operation, and as incident thereto, to transport rejected vehicles or chassis from any point in the states to which service is authorized, back to Detroit.

Henry P. Stacey and Frederick V. Slocum, both of Detroit, Mich., and Amos M. Mathews, Joseph H. Hays, and Richard W. Sharpless, all of Chicago, Ill., for plaintiffs.

Nelson Thomas, of Washington, D. C., for Interstate Commerce Commission.

Carney D. Matheson, George S. Dixon, and Edmund M. Brady, all of Detroit, Mich., for Fleming.

Frank Coleman, Sp. Asst. to Atty. Gen., and John C. Lehr, U. S. Atty., and Peter P. Gilbert, Asst. U. S. Atty., both of Detroit, Mich., for the United States.

Before SIMONS, Circuit Judge, and MOINET and PICARD, District Judges.

SIMONS, Circuit Judge.

The petition seeks to enjoin and annul an order of the Interstate Commerce Commission granting to the defendant Fleming a certificate of public convenience and necessity under the so-called "Grandfather" clause of the Motor Carrier Act of 1935, Sec. 206(a), 49 U.S.C.A. § 306(a) (now Part II of the Interstate Commerce Act). The cause came on to be heard before a specially constituted District Court of three judges, convened in pursuance of 28 U.S.C.A. § 47, and as stipulated, the hearing was both preliminary and final upon the merits of the petition.

The plaintiffs are railroads engaged in interstate commerce, four of them having been interveners and protestants before the Commission. The defendants are Fleming, individually and under his assumed firm name, the Commission, and the United States. The order sought to be enjoined was entered on September 19, 1938, upon

It is stipulated that the plaintiff railroads are engaged in transporting automotive vehicles and chassis to points in the states named, and the plaintiffs base their right to contest the validity of the order upon this competitive situation, asserting that it gives them the status of parties in interest under the provisions of Sec. 205(h) of the Motor Carrier Act, 49 U.S.C.A. § 305(h) (now 205g of Part II, 49 U.S.C.A. § 305(g), which recites, "any final order made under this part [chapter] shall be subject to the same right of relief in court by any party in interest as is now provided in respect to orders of the Commission made under part I [chapter 1 of this title] * * *". They also justify their status as plaintiffs entitled to maintain the action by reason of the appearance of some as interveners in the proceeding before the Commission upon the authority of Edward Hines Yellow Pine Trustees v. United States, 263 U.S. 143, 44 S.Ct. 72, 68 L.Ed. 216; Interstate Commerce Commission v. Diffenbaugh, 222 U.S. 42, 32 S.Ct. 22, 56 L.Ed. 83.

The defendants deny that any of the plaintiffs are entitled to maintain this action, either by reason of their appearance in the proceeding before the Commission, or independently of that fact, and move to dismiss. Their motion must be overruled. The phrase "party in interest", as used in the Transportation Act, has been before the court upon numerous occasions, the

latest discussion being that in L. Singer & Sons et al. v. Union Pacific R. Co., 61 S.Ct. 254, 85 L.Ed. —, decided December 16, 1940. In that case, the plaintiff industry, and in its companion case, Kansas City, Mo., v. L. Singer & Sons et al., 61 S.Ct. 254, 85 L.Ed. —, the plaintiff municipality, were denied the right to contest an order of the Commission because such suits cannot be instituted by an individual unless he has some special and peculiar interest which may directly and materially be affected by alleged unlawful action. He must possess something more than a common concern for obedience to law. Absent such special and peculiar interest, he must, in common with the public interest, find his protection in the permission to sue granted to public authorities. If, however, special circumstances are shown, then he is a party in interest within the meaning of the statute, the court giving approval to the decision of this court to that effect in Detroit & M. R. Co. v. Boyne City, G. & A. R. Co., D.C., 286 F. 540.

■ The complaining railroads and the defendant Fleming are equally engaged in the transportation of automotive vehicles from Detroit to the authorized destinations, and so within the rationale of the cases distinguished in the Singer decision, Texas & Pacific R. Co. v. Gulf, Colorado & Santa Fe R. Co., 270 U.S. 266, 46 S.Ct. 263, 70 L.Ed. 578; Western Pacific California R. Co. v. Southern Pacific Co., 284 U.S. 47, 52 S.Ct. 56, 76 L.Ed. 160, we conclude that they are possessed of that special and peculiar interest in the enforcement of the challenged order that gives to them the status of plaintiffs within the meaning of the statute. This being so, we need not inquire whether their right to maintain the action is also supported by the fact that some of them appeared as parties in the proceeding before the Commission.

Section 206(a) of the Motor Carrier Act provides, except as elsewhere authorized, that "no common carrier by motor vehicle * * * shall engage in any interstate or foreign operation on any public highway * * * unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the Commission authorizing such operations." The proviso in the Section referred to as the "Grandfather" clause, declares that if any such carrier "was in bona fide operation as a common carrier by motor

vehicle on June 1, 1935, over the route or routes or within the territory for which application is made", and "has so operated since that time * * * except * * * as to interruptions of service over which the applicant * * * had no control, the Commission shall issue such certificate without requiring further proof that public convenience and necessity will be served by such operation". Pending determination of the application the applicant is authorized to continue operations. Section 208(a), 49 U.S.C.A. § 308(a), provides that the certificate issued under Sec. 206(a) shall specify the service to be rendered, and "in case of operations not over specified routes or between fixed termini, the territory within which, the motor carrier is authorized to operate".

■ The plaintiffs assail the order of the Commission as not being supported by substantial evidence of actual operation in much of the territory granted, on the ground that Fleming's deliveries were, in many of the states, negligible and intermittent, so as not to qualify him for a certificate under the "Grandfather" clause. They also complain that the Commission misconstrued the statute by interpreting "territory" as synonymous with "state", and so exceeded its authority in granting rights for operation to all points in a number of the states when the proofs showed that deliveries had been made but to one or to several points of destination in such states. Finally, they challenge the finding that Fleming was in "bona fide" operation in all of the territory, on the ground that in a number of the authorized states he had not fully complied with state law governing the operation of motor carriers within or through such states.

The Commission found (MC 48654) that Fleming had commenced operations during the early part of 1933, from which time to July, 1936, he had transported or participated in the transportation of more than 2,100 vehicles, the shipments consisting of from 1 to 16 vehicles, although shipments of 2 and 4 vehicles exceeded shipments of other quantities; that he had also transported used cars between various points in the states covered by his application, and had returned certain new cars, refused by the distributor or dealer, to Detroit, as a necessary incident to his business. In each of the states, save one, in which deliveries are authorized by the order, there had been shipments prior to

the crucial date, June 1, 1935, and shipments thereafter prior to the date of the hearing. As to many of the states, the applicant had transported numerous shipments to the points served.

The statute is silent upon the degree of operation necessary to qualify the applicant for a certificate, under the "Grandfather" clause. Subject to the condition that the operation must be bona fide, hereinafter discussed, decision upon the substantial character of the applicant's business must be considered as having been committed to the judgment of the administrative agency entrusted by the Act with regulation and enforcement. The Commission found that Fleming was engaged in a highly specialized transportation service with few direct competitors, and that but 7% of all new automobiles sold in 24 western states were being transported by the method in which the applicant was engaged. In our application of the now familiar rules governing review of factual findings by administrative bodies, we are unable to say that the findings of the Commission are unsupported by substantial evidence, and in this respect they will be sustained, except as to operation in the State of Arkansas. The record discloses that Fleming's last shipment to Arkansas was on May 12, 1935, and his testimony supports a conclusion that in that state his operations had been abandoned. United States v. Maher, 307 U.S. 148, 59 S.Ct. 768, 83 L.Ed. 1162.

As a basis for granting to Fleming authority to serve all points in a state, though actual operation during the critical period had been but to a limited number of distribution points in such state, the Commission relied upon evidence showing that distribution points are constantly being shifted from the standpoint of a state-wide area; that dealers accounts are frequently changed, and that sales volume at given points may show rapid increases or decreases. The result of a shift in distribution point would leave the applicant without authority to serve an account theretofore served, and render the carrier unable to continue an operation which he had been conducting. It took into consideration the nature and characteristics of this transportation service as highly specialized, the type of operation engaged in, the infrequency of the demands of consignees, and concluded that the record was convincing that the applicant's operations had been and would continue to be ir-

regular in nature because of the conditions under which he might secure traffic, and that the same proof, with respect to territory served, that might be required of a general commodity hauler, could not be imposed upon him, nor could his operations be confined within the same definite limits.

The statute neither expressly nor by implication gives connotation to the phrase "within the territory". No standard is found whereby the area is to be delimited, and the plaintiffs had been unable to suggest criteria by which the Commission must be governed. It is general knowledge that in many industries distribution points are determined for areas co-extensive with state boundaries. The Commission had made exhaustive studies of motor carrier transportation services and it must be assumed it has become expert in that field. We find no error in its findings in this respect.

The plaintiffs contend that Fleming's operations were not "bona fide" in character because he had failed to secure certificates from each of the states through or into which he conducted operations. Fleming had, however, made inquiry as to certificate requirements, some of which were still pending at the time of the hearing. Receipts for taxes paid in Nebraska, Wyoming, Idaho, Utah, Kansas, and Arkansas, were introduced, and the proofs showed that he held permits issued by the States of Oregon and Nebraska. In a few of the states, notably Missouri, there may have been temporary, inadvertent, or purely technical operation without sanction of local law. The Commission found, notwithstanding, that he had been engaged on June 1, 1935, and since, in bona fide operation within or through each of the states authorized.

This finding is attacked upon the authority of McDonald v. Thompson, 305 U.S. 263, 59 S.Ct. 176, 178, 83 L.Ed. 164. While that case had not been decided when the findings of the Commission were made and its order entered, it was made the basis of a petition for rehearing before the Commission, which was denied. McDonald v. Thompson holds that the expression "in bona fide operation" suggests "absence of evasion, excludes the idea that mere ability to serve as a common carrier is enough, includes actual rather than potential or simulated service, and in context implies recognition of the power of the State to withhold or condition the use

of its highways in the business of trans-portation for hire". It then reaches the conclusion that, "plainly the proviso does not extend to one operating as a common carrier on public highways of a State in defiance of its laws".

In McDonald v. Thompson the Supreme Court was not called upon to set aside a finding of the Interstate Commerce Commission, that the applicant for a certificate of convenience and necessity had been in bona fide operation before and since the critical date, nor to determine whether the finding of the Commission had been based upon substantial evidence. That such finding is one of fact is indicated by the language of the court in United States v. Maher, supra [307 U.S. 148, 59 S.Ct. 771, 83 L.Ed. 1162], "Whether an applicant seeking exemption had in fact been in operation within the immunizing period of the statute was bound to raise controverted matters of fact. Their determination Congress entrusted to the Commission". Granted that the interpretation of the phrase "in bona fide operation" is a question of law, we find nothing in McDonald v. Thompson to indicate that an applicant, who inadvertently or temporarily made deliveries into or operated through a state without its express authority having previously been granted, is operating as a common carrier on its public highways in defiance of its laws, when the state itself had not sought to exclude such carrier. McDonald had been refused the use of the highways of Texas by its Railroad Commission and its courts, but denied that Texas law applied, and set up as authority his application, under the Motor Carrier Act, and the provision therein that, pending action upon the application, his operations might proceed. Fleming's operations were in recognition of state law, and his applications to state authority and his inquiries as to the requirements of the several states were obviously so considered by the Commission. In any event there is no evidence that his inquiries were not pursued in good faith or that he had been excluded from any state by local administrative authority.

The Commission had in mind the confusion that existed with respect to the requirements imposed by the laws of the various states, and the regulations of its public Commissions. It concluded, with reference to the Missouri situation, "compliance by applicant with the applicable laws of Missouri is a matter that rests between applicant and the state authorities". Another consideration seems also important. Where Fleming had been operating with the express or implied consent of state officials while endeavoring to ascertain the formalities to be observed to secure a permit, the present denial of a certificate, by the Commission, to operate in such states under the "Grandfather" clause, would, if, thereafter, he satisfied state authority for necessary local authorization, be conclusive. As we read it, nothing in McDonald v. Thompson compels the conclusion that a finding by the Commission of bona fide operation must be set aside when such finding is based upon substantial evidence and there is no proof of the defiance of local law.

The order of the Commission will be modified by excluding from the certificate authorized thereby, authority to operate to the State of Arkansas, and as so modified the order of the Commission is sustained. The findings of the Commission and its conclusions of law, insofar as they bear upon issues herein discussed, are adopted as the findings and conclusions of the court, except as modified.