**TRANS–PACIFIC AIRLINES, LTD., v. INTER–ISLAND STEAM NAVIGATION CO., LTD.**

Civ. No. 824.

District Court for the District of Hawaii.

Feb. 27, 1948.

Frederick L. Hewitt, of San Francisco, Cal., Coates Lear, of Washington, D. C., and Sai Chow Doo and Fong, Miho & Choy, all of Honolulu, T. H., for plaintiff.

Garner Anthony, of Honolulu, T. H., (Robertson, Castle & Anthony, of Honolulu, Hawaii, of counsel), for defendant.

Ray J. O'Brien, U. S. Atty., District of Hawaii and Edward A. Towse, Asst. U. S. Atty., District of Hawaii, both of Honolulu, Hawaii, amici curiae for Civil Aeronautics Board.

McLAUGHLIN, District Judge.

This case is somewhat of a sequel to Hawaiian Airlines v. Trans–Pacific Airlines, D.C., Hawaii, 1947, 73 F.Supp. 68, wherein after a full hearing the temporary injunction was made permanent subject to further action by the Civil Aeronautics Board (final decision unreported but case on appeal).

Following the decision in that case, Trans-Pacific Airlines filed this suit under § 1007 of the Civil Aeronautics Act of 1938, 49 U.S.C.A. § 647, against Hawaiian Airlines' parent corporation, Inter-Island Steam Navigation Company, Ltd., seeking a permanent injunction only.

The plaintiff alleges that (1) Inter-Island Steam Navigation Company, Ltd., is an air carrier engaged in air transportation within the meaning of Title IV and § 401 of the

Civil Aeronautics Act of 1938, 49 U.S.C.A. §§ 401 and 481 et seq.; and (2) the defendant does not have a certificate of public convenience and necessity or any other document issued to it by the Civil Aeronautics Board pursuant to the Act.

(3) The defendant is not exempt under any provision of the Act, or rule or regulation of the Board, 49 U.S.C.A. §§ 481, 496.

(4) The defendant has been and is violating the Act by engaging in air transportation as a common carrier without a certificate or a document of exemption issued by the Board.

(5) The plaintiff, holder of a document of exemption issued to it by the Board under § 292.1 of its Economic Regulations (12 F. R. 3077) allowing it to operate as an irregular air carrier, has been and is operating as an air carrier engaged in the air transportation of persons and property within the Territory of Hawaii, and the illegal operations of the defendant substantially parallel plaintiff's air carrier service.

(6) The plaintiff is a party in interest within the meaning of the Act, 49 U.S.C.A. § 647, and the illegal operations of the defendant are causing it great damage for which it has no adequate legal remedy.

Having filed an answer denying the essential allegations of the complaint, the defendant thereafter filed this motion for a summary judgment. Supporting the motion is the affidavit of defendant's president. From this source come these representations: (a) since 1883 the defendant has been engaged in the operation of a common carrier steamer service between ports in the Hawaiian Islands; (b) in 1929 the defendant formed a separate corporation, Hawaiian Airlines, Limited, and that legal entity, of which the defendant now owns 90.9% of its stock, has since November 1929 continuously engaged in air transportation; (c) in 1939 Hawaiian was granted a certificate of public convenience and necessity under § 401(e) (1)—the grandfather clause —of the Civil Aeronautics Act of 1938, and has since operated pursuant to it; (d) in 1939 the Civil Aeronautics Authority (now Board) formally approved the interlocking relations of the directors of the defendant and Hawaiian Airlines, Limited, and the Board has approved all changes therein to date; (e) the two corporations operate independently of each other, the only executive officer common to both being the affiant, and all agreements between the two corporations required to be filed under the Act have been filed; (f) Hawaiian pays the defendant an agreed rent for office space in its building; (g) Hawaiian runs its own business independently, has agreements with various travel agencies—of which defendant is one—which are paid a standard 5% commission and which clearly hold out to the public that they sell, not their own air transportation, but Hawaiian's; (h) the defendant neither owns, operates nor leases any aircraft, is strictly a water carrier, has never undertaken directly or indirectly to engage in any manner in air transportation, and has never held itself out to the public as being engaged in air transportation; and finally (i) plaintiff's routes substantially parallel those flown by Hawaiian.

The plaintiff of course opposes the motion and tenders a counter-affidavit by its president reciting that (1) the defendant has held itself out as being engaged in air transportation as illustrated by an advertisement on August 24, 1947, describing an all-expense week-end tour to Kona, Hawaii, the details of the tour being that one could arrange through Inter-Island's travel service for $80 plus tax to go by a ship owned by the defendant to Hilo, Hawaii; by automobile to various parts of the Big Island, with hotel accommodations at Kona Inn; and return to Honolulu by an Hawaiian Airlines plane. The further recitals of the affidavit have reference to such facts as the plaintiff has permission of the Board to operate as an irregular air carrier and so operates, has carried thousands of persons and pounds of property, has a half million dollar investment, and has pending an application for a certificate of public convenience and necessity which the Board is scheduled to hear in March.

Intervening as an amicus curiae through the United States Attorney, the Board advised the court that the fact that Hawaiian Airlines, Limited, is controlled by the defendant was known to it when Hawaiian received its certificate (1 C.A.B. Reports 204),

and it also has been subsequently recognized in proceedings before the Board approving the interlocking relationship (July 26, 1939, and "The Hawaiian Case," C.A.B. Docket No. 851). The Board took no position with respect to the issues but asked simply that no order be made precluding Hawaiian from operating under its certificate lest scheduled service to the public be interrupted.

With the case in this position, the defendant supports its motion by bringing to bear in this economic war such legal weapons as:

1. The court lacks jurisdiction to grant the prayed for relief because the plaintiff is not a "party in interest" within the meaning of that phrase as used in the Act, 49 U.S.C.A. § 647.

2. The facts show the defendant not to be engaged directly or indirectly in air transportation.

The legal arms selected by the plaintiff with which to resist the motion are:

(a) Being an authorized irregular air carrier, with an application for a certificate of public convenience and necessity pending and set for hearing, with a substantial investment, and providing substantially parallel service, the plaintiff is a "party in interest" under the Act, and the court, therefore, has jurisdiction.

(b) The pleadings and affidavits raise genuine issues of fact thus precluding summary judgment.

(c) In any event, defendant is not as a matter of law entitled to such a judgment.

I. The vital question of jurisdiction of necessity will be considered first, for if it is lacking the remaining questions become purely academic.

No claim is made to the existence of other than a statutory basis of jurisdiction. That is, lacking a legal right no equitable grounds for relief are advanced. Plaintiff's case is, therefore, squarely predicated upon § 1007 of the Civil Aeronautics Act, 49 U.S.C.A. § 647.

As decided in Alaska Air Transport v. Alaska Airplane Charter Co. D.C., Alaska, 1947, 72 F.Supp. 609 and Hawaiian Airlines v. Trans–Pacific Airlines, supra, in the case of an alleged violation of § 401(a) of the Act, 49 U.S.C.A. § 481(a), upon the petition of a "party in interest" a district court has jurisdiction to enjoin such a violation. If, as is possible under the Act, the same charge is pending before the Board, a court may decline to utilize its jurisdiction until the administrative remedy has been pursued to a conclusion. As no representation is made here that this complaint has been or now is before the Board, there is no reason for declining to exercise jurisdiction if it exists. The plaintiff's application for a certificate as a regular air carrier is a matter which is wholly irrelevant to the issues here presented, unless that fact makes the plaintiff a "party in interest" in a judicial proceeding under § 1007 of the Act.

The jurisdictional question reduced to plain terms is: Does the jurisdiction conferred by § 1007 of the Act upon district courts go as far as to include cognizance of a § 401(a) complaint lodged by a noncertificated irregular air carrier operating pursuant to an exemption to Title IV of the Act in the form of a letter of registration issued by the Board under its Economic Regulations No. 292.1 (12 F.R. 3077).

Section 1007 provides that in the case of a violation of § 401(a) "the Board * * * or * * * any party in interest, may apply to the district court of the United States, * * * for * * * enforcement * * *." Although the phrase "any party in interest" is not defined by the Act, the defendant contends that § 1007 should be read as if it said the Board or any certified air carrier may apply for enforcement, thus relegating all non-certificated irregular air carriers and others to the administrative tribunal exclusively.

The defendant grants that this Act, and particularly § 1007, was modeled by the Congress upon the Motor Carrier Act, 49 U.S.C.A. § 305(g), and that the ancestor of both acts is the Transportation Act, 49 U.S.C.A. § 1 (20). However, the argument is that the "party in interest" phrase in the Civil Aeronautics Act has a more restricted meaning than has the same phrase in the Transportation Act because of the distin-

guishable regulatory framework of these acts.

The distinction between this Act and the Transportation Act, it is said, rests in the fact that whereas under the Transportation Act railroads are required to have a certificate of convenience and necessity only when they propose to extend or abandon a line of railroad, under the Civil Aeronautics Act no air carrier can engage lawfully in air transportation at all without first having a certificate of convenince and necessity or a document of exemption. This difference is claimed to be vital to the issue under consideration and to explain why a railroad with a pending application for a certificate but without a road in being or in operation could successfully obtain an injunction against a railroad which was building an extension of its line in the complaining corporation's proposed territory. Western Pacific California R. Co. v. Southern Pacific Co., 1931, 284 U.S. 47, 52 S.Ct. 56, 76 L.Ed. 160. Had the judicial interpretation of this phrase been based on legal rights only, a railroad corporation such as above described would have been without protection from wrongful acts, and one of the essential purposes of the Transportation Act—to prevent economic waste by unregulated competition—would be defeated.

While recognizing that administratively a person such as plaintiff with an application for a certificate on file is regarded as having an interest in any case before the Board involving the furnishing or discontinuance of air transportation (Economic Regulations 292.4(a), nevertheless it is argued such a person is not judicially a "party in interest" in a § 401(a) case before a court. See Pittsburgh & W.Va. R. v. United States, 1930, 281 U.S. 479, 486, 50 S.Ct. 378, 74 L.Ed. 980, and Alton R. Co. v. United States, 1942, 315 U.S. 15, 19, 62 S.Ct. 432, 86 L.Ed. 586. This is said to be so because unlike the Transportation Act this Act provides that no one can engage in air transportation without a certificate or an exemption, hence to accomplish the Act's objectives there is no need—as there was under the Transportation Act—to judicially enlarge the meaning of the phrase in order to afford protection to persons who would otherwise be at the mercy of wrongdoers.

So it is that, in reliance upon Massachusetts v. Mellon, 1923, 262 U.S. 447, 488, 42 S.Ct. 597, 67 L.Ed. 1078, to the effect that to be a "party in interest" a complainant must have more than a common concern for obedience to law, defendant contends that the plaintiff here has only a policeman's interest, which is inadequate to invoke the court's jurisdiction which defendant asserts is limited to § 401(a) complaints filed by the Board or certificated carriers, while all others including plaintiff must seek relief from the Board under § 1002 of the Act, 49 U.S.C.A. § 642.

Jurisdictionally the plaintiff takes the position that the Civil Aeronautics Act and the Transportation Act are indistinguishable and that therefore the "party in interest" phrase in the Civil Aeronautics Act should have the same meaning as assigned to it in Western Pacific California R. Co. v. Southern Pacific Co., supra; Texas & P. R. v. Gulf, C. & S. Fe. R. Co., 1926, 270 U.S. 266, 46 S.Ct. 263, 70 L.Ed. 578; and Singer & Sons v. Union Pac. R. Co., 1940, 311 U.S. 295, 61 S.Ct. 254, 85 L.Ed. 198.

The plaintiff also relies upon Alaska Air Transport v. Alaska Airplane Charter Co., supra. I fail to find in this case the comfort which it gives the plaintiff here, for though it is true that under the Board's Economic Regulations 292.2 Alaskan air carriers, due to special conditions obtaining in that territory, are accorded a general exemption relating to regularity and adequacy of service from the provisions of § 401(a) and § 404(a) of the Act, nevertheless the reported case does not disclose it to have been a suit by an authorized irregular air carrier against an unauthorized irregular air carrier. On the contrary, it affirmatively appears to have been a suit by a certificated air carrier against an unauthorized irregular air carrier.

However, I do not believe that the "party in interest" phrase found in this Act should be so narrowly construed, as defendant contends, as to limit access to the courts in a § 401(a) situation to the Board and certified air carriers only. There is indeed a dis-

tinction between the regulatory features of the Transportation Act and those of this Act, and to be sure in a recent case involving the "public interest" in connection with an application to engage in overseas and foreign air transportation the Supreme Court dismissed arguments based upon analogies by saying that "However useful parallels with older forms of transit may be in adjudicating private rights, we see no reason why the efforts of the Congress to foster and regulate development of a revolutionary commerce that operates in three dimensions should be judicially circumscribed with analogies taken over from two-dimensional transit. * * *" Chicago & Southern Air Lines v. Waterman S.S. Corporation and Board v. Waterman S.S. Corporation, 68 S.Ct. 431, 434, I am nevertheless of the opinion that here the public interest would be too narrowly circumscribed by adopting defendant's contention. It is entirely possible for example that situations may arise wherein carriers other than by air should be judicially recognized as being parties in interest under § 1007. So it is that while unlike the Motor Carrier Act this Act does not specifically incorporate § 1 (20) of the Transportation Act (see Alton Railroad v. United States, supra), I nevertheless believe and hold that the phrase "party in interest" found in § 1007 of the Act should be given the same wide scope as judicially accorded it—though perhaps for different purposes—by the courts in interpreting the Transportation Act. And it further strikes me that if Congress intended the narrow construction urged by the defendant it could easily have used appropriate words instead of a phrase having a well recognized meaning in the transportation field.

▆▆ II. Giving the phrase "party in interest" the same scope given it by the courts under the Transportation Act, the complaint here must be measured to determine whether or not (1) "some definite legal right possessed by complainant is seriously threatened" or (2) "the unauthorized and therefore unlawful action of the defendant carrier may directly and adversely affect the complainant's welfare by bringing about some material change in the transportation situation." Western Pacific California R.

Co. v. Southern Pacific Co., 1931, 284 U.S. 47, 51-52, 52 S.Ct. 56, 57, 76 L.Ed. 160, and Singer & Sons v. Union Pac. R. Co., supra.

While entertaining grave doubt as to the aid which facts stated in a counter-affidavit can give to the allegations of a complaint, nevertheless taking the view most favorable to the plaintiff we have this situation described:

(a) Plaintiff is lawfully operating as an irregular air carrier (complaint);

(b) Since July 1946 it has carried in excess of 77,000 passengers and in excess of 1,250,000 pounds of air freight and has an investment in its business of over $500,000 (counter-affidavit);

(c) It has applied for a certificate of convenience and necessity to operate as a scheduled air carrier (counter-affidavit); and

(d) Defendant's unlawful operations are causing it great damage for which it has no legal remedy (complaint).

Certainly plaintiff does not come within the first part of the accepted definition as it has no legal right upon which to stand. It operates under a revokable license in which it has no property interest. And even if it had a standing on this score, its position is not "seriously threatened." Its operations are only exposed upon its own theory to unlawful competition against which its license guarantees it no protection. Its document of exemption is not the equal of a franchise.

Nor am I satisfied that plaintiff meets the test of the other part of the definition. It may well be that the alleged unlawful competition by defendant directly and adversely affects plaintiff's welfare, but I fail to see where an economic battle between a lawful irregular air carrier and an alleged unlawful irregular air carrier if allowed to continue would materially change the air transportation situation in Hawaii.

It seems to me that irregular air carriers should take their grievances and complaints back to the Board which created them, for to entertain jurisdiction in the absence of factors conferring it would be, as Mr. Justice Frankfurter points out in Singer & Sons v. Union Pac. R. Co., supra, 311 U.S. at page 307, 61 S.Ct. at page 259, 85 L.Ed.

198: "* * * to invite dislocation of the scheme which Congress has devised for the expert conduct of the litigation of such issues. It also would put upon the district courts the task of drawing fine lines in determining when a private claim is so special that it may be set apart from the general public interest and give the claimant power to litigate a public controversy."

The plaintiff has not described "a private claim * * * so special," in my opinion, as to give it the "power to litigate a public controversy." Its remedy is to petition the Board to act in the public interest to enforce the Act's provisions.

Lacking jurisdiction it is unnecessary to decide whether or not, if jurisdiction existed, a proper case for summary judgment has been stated.

No ruling upon the merits of the motion for summary judgment being possible for lack of power to decide, an order dismissing the cause for lack of jurisdiction may be entered.