**NORTHEAST AIRLINES, INC., Plaintiff,**

**v.**

**WORLD AIRWAYS, INC., Nationwide Charters and Conventions, Inc., and Harold Low, Defendants.**

**Civ. A. No. 64-879.**

United States District Court
D. Massachusetts.

March 12, 1965.

Laurence S. Fordham, Foley, Hoag & Eliot, Boston, Mass., for plaintiff.

C. Keefe Hurley, Earle C. Cooley, Hale & Dorr, Boston, Mass., Jerrold Scoutt, Jr., Washington, D. C., Edward J. McCormack, Jr., Lawrence R. Cohen, Francis J. Larkin, Boston, Mass., for defendant World Airways, Inc.

Gael Mahony, Henry S. Healy, Boston, Mass., for defendants Nationwide Charters and Conventions, Inc. and Harold Low.

SWEENEY, Chief Judge.

There is now before me a motion for summary judgment against all defendants, this motion being supported by affidavits and exhibits. All defendants have filed counteraffidavits and exhibits. The effect of summary judgment, if allowed, will be to make the temporary injunction issued by this court, 237 F.Supp. 383, on December 21, 1964 permanent. An appeal from that preliminary injunction is now pending before the Court of Appeals for this Circuit.

In its motion the plaintiff alleges ten violations by World of its interim certificate. Some of these, standing alone, might not warrant the harsh effect of an injunction. Some, also, are contested factually and, therefore, ought not to be considered in an application for summary judgment. The court is of the opinion that it can pass upon and grant the motion for summary judgment, basing its decision on the illegality of the plan of operation disclosed in the contract between World and Nationwide and in its operation.

The defendants contend that the complaint does not state a claim upon which relief can be granted and that the court has no jurisdiction over the matter

involved. Both of these contentions are without merit and overruled. 49 U.S. C.A. § 1487 specifically confers jurisdiction on this court to enforce by injunction or otherwise compliance with section 1371(a) which deals with the certificate of public convenience and necessity issued to World and other airlines.

## Findings of Fact

The defendant Low is the sole stockholder of Nationwide and conducted all negotiations in behalf of Nationwide with World. In its Memorandum of December 21, in passing upon the necessity of an injunction *pendente lite* the court concerned itself with the activities of Nationwide as agent for World as the contract between the defendants was designated as a "Sales Agency Agreement." At that time the court found that the activities of Nationwide, as the so-called "agent" for World, constituted the conducting of individually-ticketed transportation under the guise of "charter trips." The evidence before the court established that the flights were not true charter flights and the injunction, therefore, issued, prohibiting flights that were not within the terms of World's certificate.

There is now before the court the agreement executed in August 1964 between World and Nationwide. While it is designated as a "Sales Agency Agreement," it is, in fact, a contract for hire which under the terms of World's certificate is illegal. The defendants contend that their activities are authorized by decision of the Civil Aeronautics Board in the Shower of Stars case, issued by the Bureau of Enforcement on July 1, 1964 and affirmed by the Board on October 23, 1964. A copy of that opinion is attached to the defendants' brief. After the Shower of Stars decision was made public, the defendants devised their present plan of operations, using it as a springboard from which they might conduct regularly scheduled trips between Boston, New York and Miami and Hawaii during the period when traffic was heaviest. In setting up their plan, they did not confine it to the permissible facts developed in

that case but went beyond the scope of the decision to an extent that drew from the Bureau of Enforcement of the Board a letter dated December 11, 1964, calling World's attention to the fact that "some of the recent activities in the domestic charter field are beyond the scope of the Shower of Stars and raise new questions." That letter did not directly charge World with being one of those in the domestic charter field who had gone beyond the scope of the decision, but it is noteworthy that as a result of the receipt of that letter World cancelled certain flights and caused Nationwide to eliminate certain then objectionable advertising. The Shower of Stars decision is somewhat helpful in deciding this case but in and of itself is not controlling.

An examination of World's interim certificate discloses, however, that Part I authorized it to conduct charter trips. Part V (1) of the same certificate defines charter trips as meaning " * * * air transportation * * * where the entire capacity of one or more aircraft has been engaged * * *

"(b) By a person (no part of whose business is the formation of groups or the consolidation of shipments for transportation or the solicitation or sale of transportation services) for the transportation of a group of persons and/or their property, as agent or representative of such group; * * *

and where such air transportation does not include services (i) offered by or on behalf of the holder hereof for the carriage of individual members of the general public who are formed into or joined with any group with the direct or indirect assistance or participation of the holder hereof, or (ii) performed under an arrangement with a person * * * who provides or offers to provide transportation to the general public, * * * ." Perhaps under the authority of its charter, World directly might have engaged in local advertising for the formation of charter-worthy groups; and if it could do so, it could probably authorize an agent to do it in its behalf. But section (b) is

in the nature of a prohibition against engaging as its agent one who is engaged in part in the formation of groups for transportation. I find and rule that Low and Nationwide come within the terms of that proviso.

Stripped of its legal verbiage, the so-called "Agency Agreement" is a contract on the part of World to provide its aircraft to Nationwide, a part of whose business is the formation of groups for air transportation. Nationwide, on its part, agrees to pay for such aircraft. World agrees to provide and Nationwide agrees to pay for 262 flights out of Boston, New York, Philadelphia, only 44 of which could be permissively cancelled by Nationwide. The contract was written all in favor of World; although it specified that Nationwide was to charter its planes only to bona fide groups, it, nevertheless, looked to Nationwide to guarantee payment for each flight scheduled in the exhibits attached to its contract. Whether a flight was composed of a bona fide group or not, and without regard to the number of passengers aboard the plane and even if, in fact, there were no passengers and, hence, no flight, Nationwide was bound to pay the contract price for the plane subject to certain allowances.

On its part, Nationwide established a fixed price for each packaged tour, based upon what it had contracted to pay to World plus what it had contracted to pay hotels and others in order to make up the package. This figuring must have been done on the basis of an anticipated certain number of passengers. If there were more than the base number, Nationwide was the beneficiary; if there were less than the base number, Nationwide was the loser. The letter of December 11 pointed out that true charter flights must be based upon a pro rata cost to the passengers of the plane. It further pointed out that there could be no sliding up and down of the land costs so as to avoid refunds to its passengers in order for the flights to be proper pro rata charters. It stated, "the portion of the total cost of the package attributable to air transportation must be clearly ascertainable by dividing the air carrier's charter price by the number of passengers."

Conclusions of Law

On the basis of the above, I find and rule that the flights scheduled between the defendant World Airways, Inc. and the defendant Nationwide Charters and Conventions, Inc. under the so-called "Sales Agency Agreement" are in violation of "Part I—Charter Service" as defined by Part V of its interim certificate and are illegal; and the defendant World is liable to plaintiff Northeast Airlines, Inc. for damages, if any, suffered by it.

I find and rule that Nationwide Charters and Conventions, Inc. and Harold Low, individually, cooperated fully with World in the illegal venture and are equally liable to plaintiff Northeast for such damages as it may have suffered.

On the motion for summary judgment, judgment is to be entered for the plaintiff and the temporary injunction is now made permanent under the same bond and terms provided in the temporary injunction. The case is retained by this court for the assessment of damages.