NORTHEAST AIRLINES, INC.,
Plaintiff,

v.

NATIONWIDE CHARTERS AND CONVENTIONS, INC., and Harold
Low, Defendants.

Civ. A. No. 64–879–G.

United States District Court
D. Massachusetts.

June 27, 1968.

Laurence Fordham, Foley, Hoag & Eliot, Boston, Mass., for plaintiff.

Gael Mahony and Joseph Steinfield, Hill & Barlow, Boston, Mass., for defendants.

GARRITY, District Judge.

The history of this case can be traced through the various opinions which it has produced in this court and the Court of Appeals.[1] Briefly stated, plaintiff sought in this action under 49 U.S.C. § 1487 [2] to enjoin alleged violations of 49 U.S.C. § 1371 [3] by defendants Nationwide Charters and Conventions, Inc. (Nationwide) and World Airways, Inc. (World). The violations consisted in the carrying out of certain terms of a "Sales Agency Agreement" entered into by Nationwide and World on August 13, 1964. The agreement was to be effective through May of 1965. Under this agreement Nationwide (hereinafter referred to as "defendant") arranged for certain flights from various points in New England and the middle Atlantic states to Florida and Hawaii.

This court granted summary judgment for the plaintiff with respect to all the flights and permanently enjoined their continuance. The Court of Appeals affirmed with respect to the Miami flights but reversed and remanded for further findings with respect to the Hawaii flights. Pursuant to the mandate of the Court of Appeals, the court has conducted extensive hearings on the sole issue of whether plaintiff was a "party in interest" under 49 U.S.C. § 1487 with respect to defendant's arranging Hawaii flights. After oral argument and upon consideration of the voluminous briefs and requests filed by counsel, the court makes the following findings of fact and conclusions of law.

### Findings of Fact

1. Plaintiff is a regularly scheduled air carrier operating principally between various points along the east coast of the United States.

2. Defendant was engaged in the business of promoting and furnishing travel services. At all times material to this case defendant Harold Low was the

---

1. In chronological order, the opinions are reported as follows: Northeast Airlines, Inc. v. World Airways, Inc., D.Mass.1964, 237 F.Supp. 383; Northeast Airlines, Inc. v. World Airways, Inc., D.Mass., 1965, 239 F.Supp. 528; World Airways, Inc. v. Northeast Airlines, Inc., 1 Cir., 1965, 349 F.2d 1007; World Airways, Inc. v. Northeast Airlines, Inc., 1 Cir., 1966, 358 F.2d 691. Subsequent to the last-cited decision, World Airways entered into a stipulation with plaintiff whereby it was eliminated as a defendant.

2. § 1487(a) provides in pertinent part:
    [I]n the case of a violation of section 1371(a) of this title, any party in interest, may apply to the district court of the United States, for any district

wherein such person carries on his business or wherein the violation occurred, for the enforcement of such provision of this chapter * * *; and such court shall have jurisdiction to enforce obedience thereto by a writ of injunction or other process, mandatory or otherwise, restraining such person, his officers, agents, employees, and representatives, from further violations of such provision of this chapter * * * and requiring their obedience thereto.

3. § 1371(a) prohibits an air carrier from engaging in any air transportation "unless there is in force a certificate issued by the Board authorizing such air carrier to engage in such transportation."

president, a director, and the manager of the business of defendant.

3. During the 1964–1965 winter season, Northeast's share of the Boston-Miami market was 39%; of the New York-Miami market, 16%; of the Philadelphia-Miami market, 17%.

4. A very small part of plaintiff's business consists in carrying passengers destined to Hawaii on short legs of their journey (e.g., between Boston and New York), after which they transfer to a carrier that travels to Hawaii.

5. Hawaii and Florida are both warm-weather winter vacation areas. They have, however, significant differences in their geographic and entertainment characteristics.

6. A significant proportion of the visitors to Florida go there for reasons other than, or in addition to, vacation or pleasure. To the extent that visitors travel to Florida for reasons related specifically to Florida, they are not likely to be diverted by trips to any other destination.

7. The type of tour offered by defendant on its Hawaii trips imposed limitations with respect to length, time of departure, type of accommodations and other factors, which did not apply to travellers on plaintiff's regularly scheduled Florida flights.

8. During the 1964–1965 winter season, different classes of air service such as first class, coach, and promotional fares were competitive with and diverted traffic from each other.

9. The cost of a 15-day round trip to Miami based upon plaintiff's group fares and including hotel accommodations and other items similar to those included in defendant's Hawaii tours, was generally somewhat less than the cost of defendant's tour to Hawaii (e.g., for Boston-Miami from $300 to $375, as compared to $399 for defendant's Hawaii tour).

10. The cost of a 15-day round trip to Miami based upon plaintiff's regularly scheduled coach fares and including hotel accommodations and other items similar to those included in defendant's Hawaii tours, ranged from slightly less to slightly more than the cost of defendant's tour to Hawaii (e.g., for Boston-Miami from $350 to $425, as compared to $399 for defendant's Hawaii tour).

11. During the 1964–1965 winter season, the price of defendant's entire Hawaii tour was slightly less than the lowest available group fair to Hawaii on regularly scheduled airlines and was substantially less than the jet day coach fare to Hawaii on regularly scheduled airlines.

12. Vacation air travel markets are particularly sensitive to price changes.

13. During the 1964–1965 winter season, the comparative attractiveness of Hawaii vis-a-vis Florida increased with reductions in the cost differential between these two destinations.

14. Price was the principal factor which made defendant's Hawaii program competitive with vacations to Florida for residents of New England and the middle Atlantic states.

15. The following evidence indicated (1) the existence of substantial competition between plaintiff's services to Florida and defendant's Hawaii tours and (2) the interchangeability of Hawaii and Florida as vacation destinations for residents of New England and the middle Atlantic states:

a. The actual travel history of about 105 persons booked on defendant's Hawaii flights over a period of six winter seasons (including the 1964–1965 winter season), and of another 36 persons in the 1964–1965 winter season.

b. Comparisons of the cost of vacations for 15 nights in Florida during the 1964–1965 winter season with the cost of defendant's Hawaii package of $399.

c. Testimony of travel agents and airline officials based upon personal experience that defendant's Hawaii program was very competitive with, and diverted considerable traffic from, travel to Florida.

16. From 1965 to 1967 the volume of air charter programs from New England and the middle Atlantic states to Hawaii, comparable in customer appeal to Nationwide's Hawaii program, has grown substantially. During the same period there has been a substantial growth in scheduled air traffic from New England and the middle Atlantic states to Florida. The growth in scheduled air traffic to Florida has been many times greater than the growth in charter air traffic to Hawaii.

17. Defendant's Hawaii program most likely would have been operated at an increased level in later years had it not been enjoined.

18. The competition between defendant's Hawaii program and plaintiff's Florida flights during the 1964–1965 winter season was direct and it is likely that plaintiff would have suffered material injury if defendant's Hawaii program had not been enjoined.

*Conclusions of Law*

■ As already noted, the single question before the court at this time is whether plaintiff is a "party in interest" within the meaning of 49 U.S.C. § 1487(a) with respect to defendant's flights to Hawaii. Preliminarily, the court rejects plaintiff's contention that this question is one which involves a consideration of a general federal law of standing that is equally applicable either to the review of an administrative decision, as under 49 U.S.C. § 1486, or an independent action of enforcement, as in the present case under 49 U.S.C. § 1487. That different kinds of actions require different concepts of standing has been made clear by City of Pittsburgh v. Federal Power Commission, 1956, 99 U.S. App.D.C. 113, 237 F.2d 741, and Justice Frankfurter's concurring opinion (joined in by four other members of the Court)

in L. Singer & Sons v. Union Pacific R. Co., 1940, 311 U.S. 295, 305, 61 S.Ct. 254, 85 L.Ed. 198. In the former case, the court stated that injury to complainants may "give them 'sufficient interest to bring to the attention of the appellate court errors of law in the action of the Commission',[4] even if it be not sufficiently direct and immediate to support a suit in the district court." 237 F.2d at 748. Justice Frankfurter noted that a too liberal concept of standing in independent enforcement actions would be "to invite dislocation" of the Congressional scheme of litigation of transportation problems.[5] Accordingly, the court considers that the line of cases deriving from Federal Communications Commission v. Sanders Bros., supra, all of which involve the review of an administrative decision, is irrelevant to the present issue.

In determining, then, the narrow question as to whether plaintiff is a "party in interest" under § 1487 the court will follow the opinion of the Court of Appeals in remanding the matter to this court. The Court of Appeals stated:

> [T]here is in a broad sense competition between all levels for the amusement dollar. In that sense Northeast's Florida route might be considered to be in competition with trips to any vacation spot on the globe. But "party in interest" requires competition of a demonstrably direct sort. (Emphasis supplied.) 358 F.2d at 692.

In addition, the court, referring to its prior opinion, 349 F.2d 1007, said:

> We held then, and repeat now, that 49 U.S.C. § 1487(a) supplements the authority of the C.A.B. where there has been *special injury*. It does not make the injured party a public po-

---

4. The opinion is quoting from Federal Communications Commission v. Sanders Brothers, 1940, 309 U.S. 470, at 477, 60 S.Ct. 693, 84 L.Ed. 869.

5. Although the Court in *Singer* was dealing with the Transportation Act, 49 U.S.C. § 1 et seq., the statutory framework of the Civil Aeronautics Act was derived from, and is quite similar to, that of the Transportation Act.

liceman. (Emphasis supplied.) 358 F.2d at 692.

In sum, the Court of Appeals has held that in order for plaintiff to be a "party in interest" there must have been competition of a direct nature which has resulted in a special injury to plaintiff.

### I

■ In determining whether a product or, in this case, a service competes with another, one could begin by asking a question that often arises in antitrust cases—whether the two services are in the same relevant market.[6] But this approach is unproductive. To define the relevant market, a court must determine the cross-elasticity of the services involved or, as stated in the DuPont case:

> [T]he "market" * * * is composed of products that have reasonable interchangeability for the purposes for which they are produced—price, use and qualities considered. 351 U.S. at 404, 76 S.Ct. at 1012.

It is clear that qualitatively different services may nevertheless be in the same market because of price differentials. See, e.g., Esso Standard Oil Company v. Secatore's, Inc., 1 Cir., 1957, 246 F.2d 17, 20. Consequently, the determination whether admittedly different services compete with each other cannot be made by considering abstractly whether they are in the same market; rather, the court must look to the interchangeability of the two services. And this interchangeability can be determined principally by looking to the impact which one service has, or is likely to have, on the other.

■ However, the Court of Appeals also pointed out that the competition which exists between Florida and "any vacation spot on the globe" is insufficient; "party in interest' requires competition of a demonstrably direct sort." 358 F.2d at 692. In context, the court considers it essential for the plaintiff to prove that any injury which it would likely suffer would have been proximately caused by defendant's illegal activities. The directness requirement is not to be interpreted as eliminating the possibility of direct competition between two airlines simply because they provide airline services between two different sets of locations. If such were the test, the Court of Appeals would not have remanded the issue but would have entered judgment on it for the defendant.

■ Finally, there must be "special injury" to plaintiff if it is to be a "party in interest." This concept was discussed in L. Singer & Sons v. Union Pacific R. Co., supra. Quoting from Western Pacific Calif. R. Co. v. Southern Pacific Co., 1931, 284 U.S. 47, 51–52, 52 S.Ct. 56, 57, 76 L.Ed. 160, the court stated:

> It will suffice, we think, if the bill discloses that some definite legal right possessed by complainant is seriously threatened, or that the unauthorized and therefore unlawful action of the defendant carrier may directly and adversely affect the complainant's welfare by bringing about some material change in the transportation situation.

Other decisions dealing specifically with § 1487 of the Civil Aeronautics Act, also require a serious or material impact upon a complainant in order for it to be a "party in interest." See Trans-Pacific Airlines v. Inter-Island Steam Nav. Co., D.Haw., 1948, 75 F.Supp. 690, 694; Flying Tiger Line v. Atchison T. & S. F. Ry. Co., S.D.Calif., 1947, 75 F.Supp. 188, 193.

### II

■ The Court of Appeals indicated that mere opinion evidence to the effect that there was competition between the Hawaii and Florida flights was inadequate to support a finding that there was in fact competition. 358 F.2d at 692 n. 2. Plaintiff still relies upon expert opinion but has supplemented its

---

6. See, e. g., United States v. E. I. DuPont De Nemours & Co., 1956, 351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 1264.

case with certain objective evidence of competition. This consists mainly of evidence of the subsequent travel of persons booked on defendant's flights, their prior travel, and the comparative costs of defendant's travel package and a similarly constructed Florida package which included travel on plaintiff's regularly scheduled flights.

Admittedly, plaintiff's evidence was not as certain and precise as one would expect in an ideal world. However, although some of the points which defendant has made with respect to this evidence are well taken, they serve chiefly to call into question the exact figures proposed by plaintiff, not the substance of plaintiff's evidence. For example, defendant has suggested that in comparing the cost of its Hawaii package and that of a similarly constructed Florida package, it would be more appropriate to use plaintiff's group fares than its coach fares. The court finds it unnecessary to resolve this question because, even if group fares were used, the price of defendant's Hawaii package was still a bargain, even if not as great a one as plaintiff suggests.

In addition, defendant has demonstrated various dissimilarities between Hawaii and Florida and between its Hawaii package tour and plaintiff's regularly scheduled flights. But such dissimilarities tend to become inconsequential when one considers that both Hawaii and Florida are warm weather winter vacation areas and that by any standards the price of defendant's Hawaii package constituted an almost incredible bargain. As noted in the first part of this opinion, essentially dissimilar services can compete if there are significant differences in price.

Finally, the court has found that defendant's illegal activities were in direct competition with plaintiff's Florida flights so as to be likely to cause special injury to plaintiff. Certainly, defendant's Hawaii activities did not threaten plaintiff with a death blow; its Florida flights portended a much greater impact upon plaintiff's business. But the likely effect of defendant's Hawaii flights upon plaintiff's Florida business was serious and material, especially when the reasonably anticipated expansion of defendant's Hawaii program is considered. That it is difficult, if not impossible, to assign a specific dollar figure to the injury which defendant's Hawaii program was likely to inflict upon plaintiff's Florida business is due in part at least to the fact that the question is one of likelihood of injury.

The court concludes that the plaintiff is a party in interest with respect to the Hawaii flights arranged by the defendants Nationwide and Low and that final judgment be entered for the plaintiff.